UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
                         )
V.                       )        CRIMINAL NO. 04-CR-10392-EFH
                         )
PETER GUNNING            )

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS

The government opposes the defendant's motion to suppress 1) the search of his person, 2) the statements he made and 3) the search of his vehicle.  For the reasons discussed in detail below, the defendant's motion to suppress should be denied in its entirety.

### I.   STATEMENT OF FACTS[1]

The government anticipates that testimony and evidence presented at the suppression hearing will reveal the following:

In February 2004, postal inspectors began investigating numerous reports of undelivered and missing mail in Somerville, Massachusetts.  After examining the mail routes from which the reports originated, postal inspectors identified the defendant, Peter E. Gunning, a mail carrier at the United States Post Office in Somerville, as a potential suspect.  The inspectors also received a tip from another postal employee that the defendant was not delivering all of his mail.

---

[1]These facts have been gleaned from witness interviews, postal inspectors' reports, an arbitration hearing involving the defendant, and grand jury testimony.

1

On February 26, 2004, inspectors placed two "test" pieces of mail into the mail stream at the Somerville Post Office. These "test" pieces were addressed to fictitious names and locations on the defendant's routes. The inspectors fitted these "test" pieces with tracking devices that would send an alarm back to the inspectors when the envelopes were opened. One of these envelopes was clearly identifiable as being sent from the Mashantucket Reservation in Connecticut, with a notice stating that "the enclosed tickets are our compliments" and "thanks for completing our Casinos in Massachusetts survey... good luck." Inside this envelope, the inspectors placed one $10.00 Massachusetts state lottery scratch-off ticket, serial number 69-601573-010.

The inspectors observed the defendant handle the envelope containing the lottery ticket inside a relay bag, and then heard the alarm activate. The inspectors asked the defendant's supervisor to bring him to the postmaster's office. There, the inspectors identified themselves and asked the defendant to empty his pockets. The defendant complied, taking out a lottery ticket. An inspection of the ticket's serial number revealed that it was the same ticket that the inspectors had placed inside one of the "test" pieces of mail. When asked, the defendant stated that he had bought the ticket earlier that morning at a nearby store.

2

The inspectors then advised the defendant of his
constitutional right against self-incrimination.  The defendant
signed a form entitled "Warning and Waiver of Rights."  The
defendant then stated that he understood his rights, and that he
wanted to speak to a lawyer.  He also stated that he last worked
on February 24, 2004, two days earlier.  The inspectors asked him
if he used his personal car to deliver mail.  The defendant
initially stated that he drove a postal truck.  The defendant
then admitted that he did use his car for work but that there was
no mail in it.  The inspectors showed the defendant a copy of a
form entitled "Carrier Transportation Agreement," that the
defendant had signed, indicating that he was allowed to use his
personal car to deliver mail.

The inspectors then went with the defendant to his car in
the post office parking lot.  The car was unlocked.  The
inspectors opened the trunk of the car and discovered a sack of
mail containing letters dated February 18, 19, and 20, indicating
that they should have been delivered by February 21, 2004.

## II. THE DEFENDANT'S FOURTH AMENDMENT RIGHTS WERE NOT VIOLATED WHEN HE COMPLIED WITH THE INSPECTORS' REQUEST TO EMPTY HIS POCKETS

The defendant first moves to suppress the lottery ticket
that he removed from his own pocket as an illegal search.  Def.
Br. 1, 5.  This argument must fail.  First, it is questionable
whether a search even occurred here.  A "search," for Fourth

Amendment purposes, is a governmental intrusion that upsets a person's reasonable expectation of privacy.  See, e.g., California v. Ciraolo, 476 U.S. 207, 212 (1986); Oliver v. United States, 466 U.S. 170, 177-178.  In this case, the inspectors did not remove the lottery ticket from the defendant's pockets; in fact, there is no indication there was any physical contact between the inspectors and the defendant at all.  Rather, the defendant took the lottery ticket out of his pocket himself.  In other words, there was no governmental intrusion here. Therefore, there was no search.

Moreover, even if a search occurred, defendant gave his consent to the inspectors to do so.  A search is valid if conducted pursuant to freely given, voluntary consent. Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973).  "Whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances."  Id. at 227.  In this case, there is no evidence whatsoever that the defendant was coerced into emptying his pockets.  The facts are simple.  The defendant entered the postmaster's office, where the postal inspectors were waiting for him.  The inspectors identified themselves and requested him to empty his pockets. The defendant promptly complied.  He was not forced or threatened in any way.  In fact, the inspectors' request appears to be the

first thing they said to the defendant, outside of introducing themselves and identifying themselves as postal inspectors. Likewise, the defendant's initial reaction to their request was to comply. Accordingly, looking at the totality of the circumstances, it is clear that the defendant's consent here was voluntarily and freely given.

The defendant argues that the inspectors' request for the defendant to empty his pockets is governed by <u>Terry v. Ohio</u>, 391 U.S. 1 (1968). This argument is incorrect, for it fails to account for the fact that the defendant voluntarily and freely consented to empty his own pockets. Moreover, the defendant's <u>Terry</u> argument is premised on his assertion that the "postal inspectors did not witness any suspicious conduct on Mr. Gunning's part." This assertion is false. The inspectors had placed a "test" piece of mail on the defendant's route, watched from a gallery in the post office as the defendant handled one of those "test" pieces, and then heard an alarm go off indicating that one of the "test" pieces had been opened. Accordingly, the inspectors had ample reasonable suspicion, as required under <u>Terry</u>, that the defendant was involved in mail theft.

## II.   THE DEFENDANT'S <u>MIRANDA</u> RIGHTS WERE NOT VIOLATED WHEN HE VOLUNTARILY MADE STATEMENTS TO THE INSPECTORS

The defendant also moves to suppress statements he made to the inspectors because they were made in violation of his <u>Miranda</u> right to counsel. Def. Br. 1, 8. This argument must fail

5

because Miranda rights only apply to custodial interrogations. Here, the defendant was not in custody, and therefore had no right to counsel.

If an interrogation is non-custodial, then the suspect has no right to have a lawyer present. Miranda v. Arizona, 384 U.S. 436, 469 (1966); see also Minnesota v. Murphy, 465 U.S. 420, 422 n.3 (1984); United States v. Lanni, 951 F.2d 440, 442 (1st Cir. 1991). The Supreme Court has specifically refused to extend Miranda to non-custodial interrogations, even where the person being questioned knows that he is the subject of a government investigation. Beckwith v. United States, 425 U.S. 341, 347 (1976)(finding no custodial interrogation where IRS agents interviewed target of a criminal tax investigation at his home for one hour). "The narrow issue before the Court in Miranda was... the admissibility of statements obtained from an individual who is subjected to custodial police interrogation." Id. at 345 (emphasis added). Thus, unless the defendant here was in custody, Miranda is not implicated.

When determining whether a defendant is in custody or not, "a court must examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there was a formal arrest or restraint on the freedom of movement of the degree associated with a formal arrest." United States v. Nishnianidze, 342 F.3d 6, 13 (1st Cir. 2003)(internal citations

removed).  Among the factors to consider are "whether the suspect
was questioned in familiar or at least neutral surroundings, the
number of law enforcement officers present at the scene, the
degree of physical restraint placed upon the suspect, and the
duration and character of the interrogation."  Id. at 14
(internal citations removed).

Here, the defendant was questioned at his place of
employment, clearly a familiar surrounding to him.  There were
only two law enforcement officers present at the scene, dressed
in plain clothes.  There was no degree of physical restraint
placed upon the suspect of any kind, nor was he arrested at any
time before, during, or after the interview.  To the contrary,
the defendant was free to leave the interview at any time.  The
fact that the defendant, out of an abundance of caution by the
inspectors, was in fact advised of his rights has no bearing on
whether he was in custody, nor does the fact that he requested a
lawyer.  In short, the custodial requirements of Miranda simply
do not apply to this case.

In United States v. Lewis, 556 F.2d 446, the Sixth Circuit
rejected a Miranda challenge under similar facts to those at
issue here.[2]  In Lewis, postal inspectors suspected the

_____

[2]The First Circuit also considered a similar set of facts,
but did not address Miranda.  United States v. Burns, 15 F.3d 211
(1st Cir. 1994)(postal inspector suspected postal employee was
stealing mail after several "test" pieces disappeared; inspector
interviewed employee at post office, read her her rights, and had

7

defendant, a postal employee, was stealing mail.  Id. at 447.

Two inspectors interviewed the defendant at their office.  Id.

The inspectors read the defendant his rights and the defendant

signed a warning and waiver form.  Id. at 447-48.  The defendant

then made statements to the inspectors that he sought to

suppress.  Id. at 448.  The Sixth Circuit unambiguously found

that the defendant was never in custody for purposes of Miranda,

since he was neither arrested nor was his freedom restricted in

any way.  Id. at 449.  Importantly, the court specifically noted

that "the precaution of giving Miranda rights in what is thought

could be a non-custodial interview should not be deterred by

interpreting the giving of such rights as a restraint on the

suspect, converting a non-custodial interview into a custodial

interrogation for Miranda purposes."  Id.  There is no reason to

reach a different outcome here.

### III. THE SEARCH OF THE DEFENDANT'S CAR WAS VALID UNDER THE AUTOMOBILE EXCEPTION TO THE FOURTH AMENDMENT

Finally, the defendant moves to suppress the bag of

undelivered mail that the inspectors discovered in his car.  This

argument too must fail, because it was consistent with the

automobile exception to the Fourth Amendment.

Under the automobile exception, "the only essential

---

her sign warning and waiver form).  There, although the court did
not address Miranda, it did find that statements the defendant
made to the postal inspector were voluntary.

predicate for a valid warrantless search of a motor vehicle by
law enforcement officers is probable cause to believe that the
vehicle contains contraband or other evidence of criminal
activity." United States v. McCoy, 977 F.2d 706, 710 (1st Cir.
1992), citing United States v. Panitz 907 F.2d 1267, 1271 (1st
Cir. 1990) and Carroll v. United States, 267 U.S. 132, 153-56
(1925). "The inherent mobility of motor vehicles and the reduced
expectation of privacy associated with them justify application
of the vehicular exception." McCoy, 977 F.2d at 710, citing
Panitz, 907 F.2d at 1271, and California v. Carney, 471 U.S. 386,
390 (1985). In short, a search of a car is lawful, provided
there is probable cause to believe that an offense has been
committed, and that a search would turn up evidence of the
offense. McCoy, 977 F.2d at 710.

Here, the inspectors had ample probable cause to believe
that an offense had been committed. They had numerous reports of
missing mail from the defendant's routes. They had information
from a fellow postal employee that the defendant was not
delivering all of his mail. They placed a "test" piece of mail
on the defendant's route, saw him handle that "test" piece, and
then heard an alarm go off shortly thereafter indicating that the
"test" piece had been opened. And, most importantly, they saw
him remove from his pocket the very same lottery ticket that they
had placed in the "test" piece.

Similarly, the inspectors had ample probable cause to believe that a search of the defendant's car would turn up additional evidence of mail theft.  They knew that several items of mail had been reported missing, more mail than one could stuff in one's pockets.  They knew from the defendant's "drive out" agreement that he used his personal car to deliver mail.  Most importantly, they knew that the defendant had initially avoided admitting that he used his personal car to deliver mail, instead telling the inspectors that he used a truck.  Thus, even lacking consent or a warrant to search the defendant's car, the search of the car was lawful because the inspectors had probable cause to believe that an offense had been committed, and that a search of the defendant's car would turn up evidence of that offense. McCoy, 977 F.2d at 710.

## CONCLUSION

WHEREFORE, for the reasons stated above, the government respectfully requests the Court deny the defendant's motion to suppress in its entirety.

                                Respectfully submitted,
                                MICHAEL J. SULLIVAN
                                United States Attorney

                           By:  /s/ S. Waqar Hasib
                                S. WAQAR HASIB
                                Assistant U.S. Attorney

<u>CERTIFICATE OF SERVICE</u>

I hereby certify I have caused a copy of the foregoing document to be served on counsel of record via electronic filing this 11th day of August, 2005.

<u>/s/ S. WAQAR HASIB</u>
S. WAQAR HASIB
Assistant U.S. Attorney