# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

---

UNITED STATES OF AMERICA

               v.                             CR. NO.:  04-10392-EFH

PETER E. GUNNING,
                     Defendant.

---

## MEMORANDUM AND ORDER

December 13, 2005

HARRINGTON, S.D.J.

### Introduction

       This matter is before the Court on Defendant Peter Gunning's Motion to Suppress items seized by and statements made to United States Postal Inspectors on February 26, 2004. Specifically, defendant seeks to suppress:  (1) the search of his person and seizure of a lottery ticket; (2) the search of his automobile and seizure of undelivered mail therefrom; and (3) statements made to Postal Inspectors Kevin Stack and Ed Phillips.  Defendant Gunning argues that the searches and seizures of his person and automobile violate the Fourth Amendment's prohibition against unreasonable searches and seizures.  The statements made to Inspectors Stack and Phillips should be suppressed, Gunning argues, because they were solicited after he had invoked his right to remain silent and right to counsel.  For the reasons stated below, defendant's motion is granted.

       The Court finds the following facts:

Defendant Peter Gunning was a mail carrier based at the Somerville, Massachusetts post office.  In February, 2004, postal inspectors began investigating reports of undelivered and missing mail on defendant's route.[1]  On February 26, 2004 inspectors placed two "live tests" into the mail stream at the defendant's work station.  Live tests are envelopes fitted with tracking devices designed to alert the inspectors when the envelopes are opened.  One of the live envelopes used in this case contained a $10.00 scratch-off Massachusetts lottery ticket and was labeled "the enclosed tickets are our compliments . . . thanks for completing our Casinos in Massachusetts survey . . . good luck."  (Govt. Ex. 5).  The inspectors observed the defendant handle the live envelope containing the lottery ticket and a short time later heard the alarm activate.

Gunning was summoned to the Postmaster's office, where Inspectors Stack and Phillips identified themselves and directed Mr. Gunning to empty his pockets.[2]  The words used by the inspectors were words of command and an exercise of authority.  Gunning promptly complied and removed multiple items, one of which was the test lottery ticket.  The inspectors asked Mr. Gunning where he obtained the ticket and Gunning responded that he had purchased it that morning from a convenience store nearby.  The inspectors then advised Gunning of his constitutional right against self incrimination and right to counsel, and Gunning was presented with a document entitled "Warning and Waiver of Rights."  Gunning signed and initialed the portion of the document warning him of his rights, but refused to sign the portion pertaining to

---

[1] Initially, the inspectors conducted three "blind tests."  (Govt. Exs. 1–3).  A blind test is a piece of mail addressed to a fictitious name and location.  The return address is legitimate, however, and controlled by postal inspectors.  Here, inspectors placed three blind tests in the defendant's carrier case.  None of the tests were returned as they should have been.

[2] Though Stack and Phillips were dressed in plainclothes during the meeting, they verbally identified themselves as United States Postal Inspectors and displayed supporting identification.

"Waiver." (Def.'s Ex. 1, at 5). At that point, Gunning told the inspectors that he did not want to speak to them and wanted a lawyer.

Despite the fact that Gunning told the inspectors he did not wish to speak with them and wanted to speak to a lawyer, the inspectors continued their questioning. The inspectors asked if Gunning used his personal car to deliver mail, and he initially responded that he drove a postal truck. Gunning then amended his response, telling the inspectors that he did indeed use his car for work, but that there was no mail in it. The inspectors showed Gunning a copy of a document entitled "Carrier Transportation Agreement." (Govt. Ex. 7), and claimed that the agreement gave them authority to search Gunning's car.[3] Gunning accompanied the investigators to his automobile, which was unlocked. The inspectors opened the trunk pursuant to the Carrier Transportation Agreement and discovered a sack of mail that contained small parcels and flats, tapes for the blind, and other pieces of undelivered mail dated February 18, 19 and 20. The items were addressed to locations on Gunning's route. Gunning explained that he had forgotten to bring those items back to the post office on the last day he worked, February 24, 2004. The items recovered from defendant's pockets and automobile were seized by the inspectors. Defendant was placed on administrative leave and left the building, but was not arrested at that time.

## Analysis

Defendant seeks to suppress: (1) the test lottery ticket obtained from his pocket; (2) the mail sack and its contents found in the trunk of his automobile; and (3) all statements to Postal

---

[3] On the date in question Inspectors Stack and Phillips believed that the Carrier Transportation Agreement, also referred to as a "drive-out" agreement, authorized them to search defendant's personal automobile. As it turns out, the drive-out agreement confers no such authority and is merely a reimbursement agreement for mail carriers who, because of inadequate or unavailable public transportation, are required to use personal modes of transportation to deliver their route. (Govt. Ex. 7).

Inspectors Kevin Stack and Ed Phillips made after he invoked his right to remain silent and right to an attorney.

I.    <u>The Test Lottery Ticket</u>

Whether or not the test lottery ticket should be suppressed depends on the issue of consent:  did Mr. Gunning consent to the search of his pockets and seizure of the ticket?  The prosecution bears the burden to establish, by a preponderance of the evidence, that consent was freely and voluntarily given.  <u>United States v. Perez-Montanez</u>, 202 F.3d 434, 438 (1st Cir. 2000). Whether or not an individual has freely and voluntarily given consent is determined by examining the totality of the circumstances, including interaction between the authorities and the person alleged to have given consent.  <u>United States v. Weidul</u>, 325 F.3d 50, 53 (1st Cir. 2003).

Examining the totality of the circumstances in this case, the Court finds that Gunning did not offer his free and voluntary consent.  Consent is not freely given if a reasonable person would have believed that his consent was required by investigating officers.  <u>United States v. Goodrich</u>, 183 F.Supp.2d 135, 145 (D. Mass. 2001) (<u>citing</u> <u>Florida v. Bostick</u>, 501 U.S. 429, 438 (1991)). With respect to the inspectors' directive that Gunning empty his pockets, a reasonable person in Gunning's position would have believed consent to be required because of two main factors: (1) the authority possessed by the postal inspectors; and (2) the inevitable consequences — both legally and with respect to Gunning's employment status — of not complying with the inspectors' directions.  The inspectors had provided no <u>Miranda</u> warning prior to ordering Gunning to empty his pockets.  They also failed to advise Gunning of his right to refuse their order to empty his

pockets.[4]  What the record supports here is a finding that Gunning was "acting *in acquiescence* to an assertion of authority by the [p]ostal [i]nspectors," United States v. Ortiz, 331 F.Supp. 514, 521 (D.P.R. 1971) (emphasis in original), and not of his own volition.  The Court finds that the government has failed to sustain its burden to establish by a preponderance of the evidence that Gunning consented to the search of his pockets and seizure of the test lottery ticket.  That evidence must therefore be suppressed.

II.    The Evidence Seized From Gunning's Trunk

Whether or not the items seized from the defendant's trunk should be suppressed depends on two issues.  First, did Gunning consent to the search?  Second, does the so-called automobile exception to the search warrant requirement apply?  It bears repeating that the burden here lies with the government to show that the search in question came within a recognized exception to the Fourth Amendment search warrant requirement.  See United States v. Doward, 41 F.3d 789, 791 (1st Cir. 1994); see also United States v. Lewis, 816 F.Supp. 789, 792 (D. Mass. 1993), aff'd, 40 F.3d 1325 (1st Cir. 1994).  Because Gunning did not consent to the search of his trunk and the automobile exception does not apply, the evidence seized from Gunning's automobile trunk must be suppressed.

With respect to the issue of consent, Inspectors Stack and Phillips told Gunning that his drive-out agreement authorized them to search the car.  It is now clear, however, that that was not the case; the drive-out agreement conferred no such authority.  (Govt. Ex. 7).  Consent requires more than mere acquiescence in the face of an unfounded claim of present lawful

---

[4] Though providing such a disclaimer is not a *sine qua non* to consent, the investigators' failure to do so provides a factor weighing against the government when evaluating the totality of the circumstances.  See Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973).

authority. See Bumper v. North Carolina, 391 U.S. 543, 548 (1968) (suppressing fruits of search where consent was founded on police officer's false assertion that he had a search warrant); see also Perez-Montanez, 202 F.3d at 438. Because Gunning allowed the search of his car based on an unfounded claim of lawful authority, namely, the drive-out agreement, he did not give the inspectors his free and voluntary consent.

Nor does the automobile exception operate to salvage the inspectors' search of Gunning's motor vehicle.[5] Under the automobile exception, the only essential predicate for a valid warrantless search of a motor vehicle is probable cause to believe that the vehicle contains contraband or other evidence of criminal activity. United States v. McCoy, 977 F.2d 706, 710 (1st Cir. 1992). According to the government, Inspectors Stack and Phillips had probable cause to search Gunning's car because: (1) there had been numerous reports of mail missing from Gunning's route; (2) a fellow postal employee contended that Gunning was not delivering all his mail; and (3) Gunning was found in possession of the lottery ticket test piece of mail. (Govt. Opp'n. Br., at 9–10). However, the existence of probable cause relating to *general* criminal activity is not sufficient to justify a warrantless search or seizure of *an automobile*. The criminal activity must somehow be linked to the motor vehicle in question. Recognizing this, the government attempted to establish such a link by arguing that the amount of mail unaccounted for on Gunning's route was "more mail than one could stuff in one's pockets." (Id. at 10). This, coupled with the fact that Gunning had signed a drive-out agreement and initially denied using his

---

[5] The Court finds that when the search of Gunning's motor vehicle took place, the inspectors' basis for searching the trunk was *not* that they had probable cause to believe contraband or evidence of criminal activity was contained therein. Rather, the inspectors believed they were authorized to search the trunk of the car because of Gunning's Carrier Transportation Agreement. Nevertheless, the government's probable cause argument is addressed in more detail below.

personal vehicle to deliver mail, the government suggests, was sufficient to establish probable

cause that evidence of criminal activity would be found in Gunning's car. This is an inferential

leap the Court is unwilling to take. The government has not satisfied its burden to show probable

cause specific to defendant's automobile and the evidence seized from Gunning's trunk is

therefore suppressed.

III.    <u>Defendant's Statements</u>

Mr. Gunning also seeks suppression of statements he made to Inspectors Stack and

Phillips during the February 26, 2004 interview. The thrust of Gunning's argument is that he

unambiguously invoked his right to remain silent, but was questioned by the inspectors

nonetheless.[6]  Gunning's argument is well-founded because an individual who states in a clear and

unambiguous manner that he wishes to remain silent may not be questioned further. <u>United States</u>

<u>v. Reid</u>, 211 F.Supp. 2d 366, 370 (D. Mass. 2002) (<u>citing</u> <u>Miranda v. Arizona</u>, 384 U.S. 436,

473-74 (1966)). Since Gunning has alleged custodial interrogation, the burden is on the

government to prove that no custodial interrogation took place, some exception to <u>Miranda</u> is

applicable, or that Gunning was properly Mirandized and waived his rights. <u>See</u> <u>United States v.</u>

<u>Miller</u>, 382 F.Supp.2d 350, 362 (N.D.N.Y. 2005). The government has failed its burden in this

respect and any statements made after Gunning invoked his right to remain silent and right to an

attorney are therefore suppressed.

The government's sole argument against suppression of Gunning's statements is that

---

[6] The Memorandum of Interview prepared by Postal Inspector Kevin Stack indicates that as soon as he was advised of his constitutional rights against self-incrimination, Gunning told the inspectors that "he did not wish to speak to [them]" and "wanted a lawyer." (Def.'s Ex. 1, at 6).

Gunning was never placed in custody, that is, that Miranda does not apply in this case because there was no custodial interrogation. See United States v. Nishnianidze, 342 F.3d 6, 13 (1st Cir. 2003). In determining whether a defendant was in "custody" for Miranda purposes, the Court's task is to determine how a reasonable person in the defendant's position would have understood his situation. Id. According to the government, a reasonable person in Gunning's position would not have understood himself to be in custody because: (1) Gunning was never placed under arrest, (2) there was no physical restraint involved, (3) he was questioned in familiar surroundings (medium-to-large sized room located at his place of employment) and (4) the investigators were dressed in plainclothes. Other factors were at play, however, and the environment in which Gunning was questioned was more custodial than the government suggests. Although no show of force or forceful language was used, there was pressure inherent in the government's initial confrontation. As a general matter, the inspectors represent the law enforcement arm of the United States Postal Service. Moreover, the inspectors in this case used Gunning's supervisor to summon him to the Postmaster's office where the interrogation took place. The inspectors therefore represented not only law enforcement authority, but the authority of defendant's employer as well. The court in United States v. Steele, 648 F.Supp. 1375, 1378 (N.D. Ind. 1986), held under similar circumstances that:

> [A] reasonable person would not feel free to rebuff the inspectors out of fear of jeopardizing his or her job as well as encouraging criminal suspicion. Because the interrogators had the power to initiate criminal charges and to terminate the defendant's job, this situation involved coercion greater than the more common situation involving a suspect approached on the street by a police officer.

The fact that Gunning was never handcuffed, locked-in, or otherwise physically restrained

does not preclude a finding that he was in custody for <u>Miranda</u> purposes.  Inspectors Stack and

Phillips had the power to initiate criminal charges and see that defendant's employment was

terminated.  Thus, the forces used by the inspectors in this case, though admittedly more subtle,

were no less coercive.  And though not sufficient by itself to initiate a custodial interrogation, the

fact that Gunning was given <u>Miranda</u> warnings in the early stages of the questioning further

suggests that a reasonable person in Gunning's position would have understood himself to be in

custody.  When Gunning unambiguously told the inspectors that he did not want to speak to them

and wanted to speak to a lawyer, the inspectors' questions should have halted.  The government

has failed to show that Gunning's statements are otherwise admissible, and any statements made

by Gunning after invocation of his rights are therefore suppressed.[7]

Defendant's Motion to Suppress is granted.

SO ORDERED.

/s/ Edward F. Harrington
EDWARD F. HARRINGTON
United States Senior District Judge

---

[7] The Court is aware of only one question asked and answered *before* the defendant invoked his right to remain silent and right to an attorney.  The inspectors asked where Gunning had purchased the $10.00 lottery ticket and he responded that he had purchased it at a convenience store located near the post office.  (Def.'s Ex. 1, at 6).  Whether this statement should be suppressed for the government's failure to Mirandize the defendant prior to its being elicited was not argued by the defendant, and therefore this statement shall not be suppressed.